UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-MJ-6067-SNOW

UNITED STATES OF AMERICA,

v.

LOUIS CHARLES YOUNGLOVE,

Defendant.
_____/

FILED BY_____D.C.

FEB 18 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## DETENTION ORDER

THIS MATTER came before the Court upon the Government's *ore tenus* motion to detain the Defendant, Louis Charles Younglove, prior to trial and until the conclusion thereof ("Government's Motion"), and the Defendant's Motion to Set Bond in Opposition to the Government's Motion for Pretrial Detention (DE 6) ("Defendant's Motion"). On February 17, 2021, I conducted a hearing wherein I received evidence and heard arguments of counsel. Having considered that evidence and those arguments, as well as the statutory factors in 18 U.S.C. § 3142(g), I hereby **GRANT** the Government's Motion, **DENY** the Defendant's Motion, and order Defendant Louis Charles Younglove detained prior to trial, for the reasons stated on the record at the hearing and as further discussed below in accordance with the provisions of 18 U.S.C. § 3142(i).

A. INTRODUCTION

The Defendant is charged by Criminal Complaint with possession with intent to distribute various controlled substances, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A). The United States sought detention on the bases of risk of non-appearance and danger to the community. On February 17, 2021, I held a hearing to determine whether any condition or

combination of conditions of release will reasonably assure the appearance of the Defendant as required and the safety of any person and the community. 18 U.S.C. § 3142(f). In order to detain a defendant pending trial, the Government must establish by preponderance of the evidence that no condition or combination of conditions will reasonably assure the Defendant's appearance as required. *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985). The Government must establish by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any individual or the safety of the community. 18 U.S.C. § 3142(f)(2). Based upon the evidence presented, specifically the allegations in the Criminal Complaint, which went essentially unchallenged, I find probable cause that the Defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*). This finding gives rise to a rebuttable presumption that no condition or combination of conditions of release will reasonably assure the appearance of the Defendant as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A). Assuming, *arguendo*, that a defendant comes forward with sufficient evidence to rebut the statutory presumption, the presumption "remains in the case as an evidentiary finding militating against release, to be weigh[ed] along with other evidence." *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990); *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988). Despite the presumption, however, the burden of persuasion is upon the Government to establish by clear and convincing evidence that the defendant poses a danger to the community, 18 U.S.C. § 3142(f), and/or to establish by a preponderance of the evidence that he poses a risk of flight. *Quartermaine*, 913 F.2d at 917. In determining whether the Government has met its burden by the requisite standard of proof, this Court must take into account the factors enumerated in 18 U.S.C. § 3142(g).

2

B.  FINDINGS OF FACT

The evidence adduced at the pretrial detention hearing consisted of the information contained in the Pretrial Services Report, the Criminal Complaint (DE 1), testimony of Homeland Security Investigations Special Agent (SA) Justin Kalarchian, Government's Exhibits B-E, testimony from the Defendant's daughter, Amanda Younglove, and a proffer from defense counsel of testimony by the Defendant's ex-wife, Monica Pereyra. I additionally take judicial notice of records from case number 08-cr-80050-HURLEY, specifically DE 158. I considered all of this evidence in making my findings.

1. Government's Complaint

The Government proffered the facts contained in Criminal Complaint (DE 1), as well as some additional facts, as detailed below. SA Kalarchian adopted this proffer as his direct testimony, which went unchallenged on cross-examination.

Beginning in and around May 2020, law enforcement received information that the Defendant was actively selling narcotics in Broward County, including from his restaurant business, "Chi-Town," in Pompano Beach, Florida. Between in and around May 2020, through February 2021, in a series of undercover buys, a Confidential Human Source ("CHS") purchased narcotics from the Defendant. Additionally, during this time, law enforcement conducted surveillance and traffic stops on individuals that purchased narcotics from the Defendant.

On or about February 4, 2021, surveillance was conducted on the Defendant's residence located on 51st Street in Oakland Park, Florida ("the Residence"). The Defendant was observed entering his vehicle, identified as a white Toyota Tundra with Florida Tag "PGTW01" (the "Vehicle"), carrying a large black duffle bag. The Defendant departed the Residence, while law enforcement maintained surveillance.

Shortly thereafter, law enforcement conducted a traffic stop on the Defendant's Vehicle. Initially, when the unmarked law enforcement vehicles activated their emergency lights, the Defendant attempted a maneuver that the Government interpreted as an attempt to flee. The Defendant's Vehicle ultimately struck one of the law enforcement vehicles and came to a stop. As elicited on cross-examination, once law enforcement had effectuated the traffic stop, the Defendant was thereafter cooperative. A police narcotics canine was present on scene at the time of the traffic stop. The canine alerted to the presence of narcotics inside the Vehicle. A search of the Vehicle, and the black duffle bag, revealed, among other things, the following:

  a. Approximately 162 grams of cocaine, individually pre-packaged into 109 small baggies;
  b. Approximately 15 grams of fentanyl, individually pre-packaged into 37 small baggies;
  c. Approximately 44 grams of MDMA;
  d. Approximately 7 grams of Oxycodone pills;
  e. Approximately 122 grams of Hydrocodone pills;
  f. Approximately 450 Xanax pills, verified by Poison Control; and
  g. Approximately $18,474.00 in United States currency, wrapped in "quick count bundles" and in various denominations, consistent with the packaging of proceeds derived from narcotics trafficking.

Each of the above substances were confirmed by way of a field-test and/or were verified by Poison Control.

Post-*Miranda*, the Defendant admitted that he had additional cocaine and "stuff" located in his bedroom closet at his Residence. Law enforcement obtained a state search warrant for the

Defendant's Residence, which was executed on or about February 4, 2021. The search revealed the following in the Defendant's bedroom:

   a. Several documents with the Defendant's name, including his Florida Driver License card and several pieces of mail addressed to the Defendant at this Residence;

   b. Approximately 768 grams of cocaine;

   c. Approximately 69 grams of heroin;

   d. Approximately 319 grams of Xanax pills;

   e. Approximately 8 grams of MDMA;

   f. Approximately $487,609.00 in United States currency, which was in quick count bundles and in various denominations, consistent with the packaging of proceeds derived from narcotics trafficking; and

   g. Small and medium sized plastic bags, and digital scales, consistent with those used for drug packaging and distribution.

Each of the above substances were confirmed by way of a field-test and/or were verified by Poison Control. On cross-examination, SA Kalarchian conceded that no firearms, weapons, or ammunition were found in the Vehicle or Residence.

   2. Pretrial Services Report

According to the Pretrial Services Report (PTS), the Defendant is 57 years old, is a native of Illinois, and has lived in South Florida for the majority of his life. He resides with his 22-year-old son, Adam[1], in a residence owned by another of his sons, Anthony. He has eight children, all

---

[1] The Government noted that Adam Younglove has a pending state case for possession of fentanyl found on his person during the incidents described above.

of whom live in South Florida, as does his ex-wife, Ms. Pereyra. He has worked at a series of restaurants since 2012, most recently Chi-Town.[2] He reports approximately $7,200 in monthly income. He does not own a passport, and defense counsel proffered that the Defendant had not left the state of Florida in the last 40 years.

The Defendant reported that approximately a month ago, he suffered a pulmonary embolism, resulting in hospitalization for one week and prescriptions for blood-thinning and cholesterol-lowering medication. The Defendant's Motion asserted that the Defendant is not receiving some of his prescribed medication[3] while in Broward County Jail and that doctors within the Broward County Jail were not sure what medication to prescribe for the Defendant. At the hearing, defense counsel asserted that Broward County Jail doctors had examined the Defendant and would not prescribe any other medication for the Defendant.

The PTS Report also noted that the Defendant has a history of drug use, specifically marijuana and cocaine, dating back to his teenage years. The PTS Report further notes that, while the Defendant completed the Compass Health Systems substance abuse program in 2017 while on supervised release, he tested positive for cocaine use several times during his supervision between 2012 and 2019.

Finally, the PTS Report details the Defendant's criminal history. Most pertinent here (in addition to several older convictions), the Defendant has state convictions for manufacturing marijuana (1997), possession of cocaine and possession/purchase/sell/deliver marijuana (2004),

---

[2] While the PTS Report indicates that the Defendant owns Chi-Town, defense counsel clarified that he is not the owner. Nevertheless, the Government asserted that Chi-Town is, essentially, a business run by the Defendant's family and that the Defendant has some managerial responsibility.
[3] Defense counsel clarified that the Defendant has been prescribed a blood-thinning medication from doctors within the Broward County Jail but not other medication meant to address his embolism.

6

and trafficking in cocaine (2004), as well a federal conviction for manufacture of marijuana (2008). The federal conviction, in case number 08-cr-80050-HURLEY, led to a sentence of 120 months' imprisonment, reduced to 60 months under Fed. R. Crim. P. 35, and a term of supervised release. The Defendant violated his term of federal supervised release twice, in 2014 and in 2016.[4] In 2014, the violations included committing battery against Ms. Pereyra (therein identified as Monica Garcia) and another individual, and refusing to submit to drug testing (including deceptive behavior towards his U.S. Probation Officer). *See* Report and Recommendation, *United States v. Younglove*, No. 08-cr-80050 (S.D. Fla. June 23, 2014), DE 158 (adopted by DE 159). Notably, after an evidentiary hearing, Magistrate Judge Matthewman found that the Defendant "engaged in abusive behavior toward a United States Probation Officer." *Id.* That finding was based on testimony from one probation officer that the Defendant's behavior made her "somewhat fearful" and that she would have been more fearful but-for the presence of her armed colleague. The 2016 supervised release violations were based on continued drug use and unsuccessful discharge from a residential re-entry center because of such continued drug use. *See* Report and Recommendation, *United States v. Younglove*, No. 08-cr-80050 (S.D. Fla. Sept. 30, 2016), DE 181 (adopted by DE 182).

3. Defendant's Family

Defense counsel proffered testimony from the Defendant's daughter, Amanda, and his ex-wife, Monica Pereyra. The proffer reaffirmed the Defendant's time living in the community without any travel outside of Florida, that he had never missed a court date, and that the Defendant had no intention to flee. Ms. Pereyra, who also works at Chi-Town, would ensure that the

---

[4] The Defendant's 2004 state cocaine trafficking conviction caused a violation of the term of probation imposed on his other 2004 state conviction.

7

Defendant would not work at Chi-Town while on release if so ordered by the Court, and both Ms. Pereyra and Ms. Younglove would watch over the Defendant to ensure his compliance with any conditions of bond. On cross-examination, Ms. Younglove testified that she lives in Delray Beach with a roommate and works at a hotel. She typically sees her father at the Chi-Town restaurant, not his Residence. She re-asserted that she could "check in" on him to make sure he is complying with his bond and that they have a close relationship.

C. STATEMENT OF REASONS FOR DETENTION

Title 18, United States Code, Section 3142(g) requires the Court to consider the nature and circumstances of the offense, the weight of the evidence against the Defendant, the history and characteristics of the Defendant, and the nature and seriousness of any danger to a person or to the community caused by the Defendant's release. After considering those factors in detail as described below, and based upon the above findings of fact, the Court specifically finds by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of the community. 18 U.S.C. § 3142(e).

1. The nature and circumstances of the offense charged.

The alleged offense is very serious based on the wide array of drugs the Defendant is alleged to have possessed, both in the duffel bag in his Vehicle and, in greater quantities, at his Residence. While defense counsel accurately argued that there is no evidence of the presence or use of firearms, the distribution of these controlled substances nevertheless constitutes a danger to the community. As the Government argued, the presence of fentanyl, a few milligrams of which can cause a fatal overdose, is particularly troubling. Other troubling circumstances include the Defendant's apparent (though, perhaps, short-lived) attempt to flee when law enforcement initiated the traffic stop and the fact that the Defendant stored significant quantities of controlled substances

8

in the home he shares with his 22-year-old son (in addition to apparently selling out of the family-run Chi-Town restaurant). This factor thus weighs in favor of detention.

2. <u>The weight of the evidence against Defendant.</u>

The weight of the evidence against the Defendant is strong. Although the Defendant retains the presumption of innocence, the clear and convincing evidence indicates that, after law enforcement conducted controlled purchases of controlled substances from the Defendant over several months, the officers found the Defendant in possession of an array of controlled substances, packaged for distribution, and significant amounts of cash, in a duffle bag they observed him carrying out of his Residence and into the Vehicle registered in his name. He admitted to law enforcement that there was additional cocaine and "stuff" in his Residence, and a search warrant revealed just that, in a room with his driver's license and mail addressed to him.

If convicted based on this strong evidence, the Defendant faces a mandatory minimum sentence of five years' imprisonment, with a maximum of forty years' imprisonment. The Government estimates that, if convicted at trial, the Defendant (whom the Government asserts qualifies as a "career offender" based on his prior convictions) would face an estimated guideline range of 210-262 months. Again, this factor weighs in favor of detention.

3. <u>Defendant's history, characteristics, and criminal history.</u>

Some of the Defendant's history and characteristics mitigate the extent to which he is a risk of flight. As argued by defense counsel, he has significant family ties to the community, including eight children, one of whom testified that she is willing to take responsibility for watching over him if released on bond. He has lived in South Florida for a significant amount of time and has not traveled. Moreover, he does not have a history of non-appearance for court dates.

The Defendant's criminal history, however, weighs in favor of finding that he poses a

danger to the community. As described above, the Defendant has sustained four convictions for manufacturing or distributing controlled substances, the most recent of which carried a five-year sentence. Despite those convictions, and the significant most recent sentence, based on the evidence presented, he now faces the strong possibility of a fifth such conviction. As described above, even without the use or presence of firearms, these crimes present a danger to the community. The fact that the Defendant has repeatedly returned undeterred to such behavior suggests that he therefore continues to pose a danger to the community. I also find significant that the Defendant has sustained one violation of probation and two violations of his federal supervised release, further suggesting that release restrictions do not necessarily deter him from dangerous behavior. Furthermore, the findings of Judge Matthewman from the Defendant's 2014 violation of supervised release are at odds with the picture the defense paints of an individual who is peaceful and not a threat. The defense suggested that this contrary behavior from 2014 was potentially the result of the Defendant's struggle with controlled substance use himself, and the record of his 2014 and 2016 violations certainly supports that contention. However, the Defendant's struggles with controlled substance use only add another reason to suspect he may continue dangerous behavior despite release conditions, particularly in light of the quantity and range of controlled substances allegedly found in his Residence and Vehicle. Neither party presented evidence indicating that the Defendant had succumbed to using any of the controlled substances described in the Government's Complaint. However, given his own struggles, the Defendant should be acutely aware of the danger that the alleged activity that led to his arrest poses to others.

    4. <u>The nature and seriousness of the danger to any person or the community that would be posed by Defendant's release.</u>

The nature and seriousness of the danger posed by the Defendant should he be released comes from the risk that he could engage in narcotics trafficking activities similar to those alleged

in the Criminal Complaint. Again, the fact that the Defendant has repeatedly returned to such activity following multiple prior convictions makes this risk very real. Moreover, the fact that he is alleged to have stored significant quantities of controlled substances and cash in his home, in addition to allegedly conducting sales out of the Chi-Town restaurant, suggests that he could return to such activity even if confined to his Residence. Therefore, this factor weighs in favor of detention.

5. Conclusion

As described above, the nature and seriousness of the offense, the weight of the evidence, some of the Defendant's history and characteristics, and the nature of the risk posed by the Defendant weigh in favor of finding that the Defendant is a danger to the community and granting the Government's motion for pretrial detention. There is also a presumption in this case that there are no conditions or combination of conditions that would reasonably assure the Defendant's appearance or the safety of the community. The Defendant asserts that a bond which imposes monetary conditions, subjects him to home confinement, combined with location monitoring, prevents him from working at the Chi-Town location, and relies on the Defendant's daughter and ex-wife to monitor him would sufficiently ensure that the Defendant will abide by his conditions and appear in court as necessary. However, while I find that the proposed conditions potentially mitigate the Defendant's risk of non-appearance, I find that they are not sufficient to assure his compliance with his conditions and assure the safety of the community. As described above, the Defendant's criminal history demonstrates a repeated inability to abide by conditions and avoid controlled substance offenses. Moreover, keeping the Defendant confined to his Residence and away from the Chi-Town restaurant does not sufficiently assure that he will avoid such activity, given that he stored significant amounts of controlled substances and cash at his Residence as part

11

of the alleged offense. While I credit his daughter's and ex-wife's willingness to assist in monitoring him, I do not find that such assistance will be sufficient, given that the Defendant lives apart from both of them (and given the fact that Ms. Pereyra worked at the very Chi-Town restaurant where the Defendant was allegedly conducting controlled substances sales). Again, Magistrate Judge Matthewman's previous findings regarding the Defendant's deceptive, abusive, and intimidating behavior towards his U.S. Probation Officer while on supervised release also suggest that the Defendant may be a danger to similar officers now tasked with supervising him, or at least shakes my faith that he will abide by the conditions that are set. Given all of the circumstances described above, I find that detention is warranted.

I have also seriously considered the Defendant's medical condition, specifically his reported pulmonary embolism, his concern about his inability to obtain his prescribed medication while in the Broward County Jail, and his concerns for serious illness (in light of his heart condition) should he contract COVID-19. The Defendant's Motion urges that he should be released on bond in order to allow him to continue receiving treatment from the doctors who treated him at the hospital and who prescribed his current medication. While I take the Defendant's medical concerns seriously, there is insufficient evidence in the record from which I can conclude that the Defendant's medical condition – and the alleged inadequacy of care from doctors at the Broward County Jail – should compel the Defendant's release when other circumstances indicate he should be detained. The only evidence regarding the Defendant's medical condition and the treatment he can, or cannot, receive while in custody came from defense counsel's proffer of the Defendant's testimony. From such proffers and the Defendant's Motion, it was unclear whether the doctors in Broward County Jail have: (a) concluded that the Defendant does not need additional medication; (b) determined that they cannot obtain medication that he does actually need; (c)

decided that they are unwilling to seek or obtain additional medication; or (d) simply do not know what additional medication he requires based on the Defendant's inability to identify the medication. In order for the Court to determine that the Defendant's medical condition compels his release, it would need actual record evidence and/or sworn testimony from the Defendant's treating physicians (from the hospital and from the jail) in order to understand exactly what care the Defendant needs and what care is, or is not, available. During the hearing, the Government committed to immediately working with doctors at the Broward County Jail and defense counsel to ensure that the Defendant receives sufficient medical care. If the Defendant is able to present more concrete evidence that he is not receiving appropriate care despite those efforts, he may seek further relief from the Court.

D.  DISPOSITION

Being fully advised, the Court hereby ORDERS that the Defendant, Louis Charles Younglove, be detained prior to trial and until the conclusion thereof.

The Court further ORDERS:

1. That the Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That the Defendant be afforded reasonable opportunity for private consultation with counsel; and

3. That, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined deliver the Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED at Fort Lauderdale, Florida this 18th day of February 2021.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge

Copies to:

Counsel of Record
United States Marshal
United States Pretrial Services